[No. 5931.]

## OXFORD HOTEL COMPANY v. LIND.

Innkeeper—Liabilities—The safe-keeping of the money of one not a guest is not within the scope of an innkeeper's calling or duties. Liability for a deposit for such purpose can be created only by express contract.—(60)

A guest quitting an inn, not intending to return, deposits with the clerk, merely for safe-keeping, and without the privity of the innkeeper, a sum of money. It is placed in the safe, but when called for some weeks later, cannot be found. The innkeeper is not liable.—(58-63)

*Appeal from Denver County Court* — Hon. CHARLES E. SOUTHARD, Judge.

Messrs. DOUD & FOWLER, for appellant.

Mr. GEORGE F. DUNKLEE, and Mr. O. E. JACKSON, for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

Inasmuch as there was a verdict in favor of the plaintiff below, who is appellee here, the testimony given in his behalf, mainly his own, will alone be considered. From this it appears that the plaintiff came to the hotel of the appellant at seven or eight o'clock in the evening of June 9th, engaged a room, paid for it and occupied it during the night. The plaintiff was in ill health. After engaging his room, and during the same evening, the proprietor of a

sanitarium called upon him at the hotel, and arrangements were made whereby the plaintiff was to go to the sanitarium, and the proprietor was to send a conveyance to the hotel to take him there between nine and ten o'clock the next morning. During that evening he counted his money and separated it into two parts. The one part consisted of $200.00, which he intended to deposit in a bank; the other part consisted of $175.00, which he was going to take with him to the sanitarium. About eight o'clock the next morning he left his room and went to the hotel counter. He there told the clerk that he was going away; that he did not want his room any more and asked for the proprietor, by whom he wanted to send some money to a bank for deposit. The clerk asked him why he did not leave it in the safe at the hotel. The plaintiff asked if it would be all right, and the clerk assured him that it would be. Thereupon, the plaintiff handed the clerk the $200.00, which he had intended to bank. The clerk put it in an envelope, which he sealed and on which he wrote the plaintiff's name, put it in the safe and told the plaintiff if he (the clerk) was not there another clerk would be, to give him the money when plaintiff came for it. After this, and between nine and ten o'clock, he left the hotel, as arranged the evening before, and proceeded to the sanitarium, where he paid $50.00 in advance for two months' board and lodging and deposited the other $125.00 with the proprietor. Here he became quite ill, and about a month after he had left the hotel, he returned for the money he had deposited there. No one then employed at the hotel knew anything about the money. The clerk to whom he had given it was not then in the employ of the hotel. The plaintiff then told the manager of the hotel about the deposit of the money with the clerk. This was the first the manager knew of it. The

former clerk was found and he informed the manager and plaintiff that he could not remember that the plaintiff had deposited any money. The manager sought for the money, but it was not found. What became of it is not known. During the month after he had left the hotel, the plaintiff thought of his money frequently and worried about it, but he told no one about it, nor made any effort to procure it, until he went to the hotel about a month afterwards.

He brought this action against the hotel company to recover his money. At the conclusion of plaintiff's case, the defendant moved for a nonsuit, which motion was denied and this ruling of the court is one of the assignments of error.

The plaintiff did not deposit his money with the clerk as a guest ordinarily deposits money with an innkeeper for safe keeping, while he is at an inn. He had separated this $200.00 from his other money and intended to deposit it in a bank. The other money he intended to, and did, take with him to the sanitarium to pay his expenses there and to supply himself with what he might otherwise need. The $200.00 was to be put in a bank for safe keeping. At the last moment he substituted the safe of the hotel for the bank, but the safe was to answer the same purpose as the bank, namely, a safe repository for his money for an indefinite period after he left the hotel. The only further use which plaintiff intended to make of the hotel was as a place of deposit in lieu of a bank. An innkeeper is not bound to receive the goods of a person who desires the use of the inn only as a place of deposit. *Arcade Hotel Co. v. Wiatt*, 44 O. St. 32 at 46. To make a hotel a substitute for a bank and to use the hotel for no other purpose does not ordinarily occur in the course of hotel management. Such a transaction is without the ordinary

duties of an innkeeper; is foreign to the ordinary management of an inn and must, therefore, be based upon a special contract. The plaintiff had done all that was necessary to do so far as this deposit is concerned, at least, in order to sever the relation of innkeeper and guest, which had existed between him and the defendant. He had made arrangements to go elsewhere; he had paid for his room and had given it up; he was going away with no intention of returning as a guest. The deposit of the money was made as in a bank and not in view of, nor in connection with, the relation of innkeeper and guest. All this he communicated to the clerk before or at the time of the deposit, and by communicating it, he then and there severed his relation as a guest of the hotel, so far, at least, as such deposit was concerned.

In *Wear v. Gleason*, 52 Ark. 364, Boddy, a salesman of the plaintiff, was a guest at defendant's hotel. He paid his bill; obtained a loan of $25.00, leaving a trunk as security. Boddy then gave defendant a due bill for the $25.00 received and defendant offered to give a check for the trunk, which was declined. Boddy gave defendant a railroad check for the trunk and the latter sent and got it. The court said: "There is no evidence to show that Gleason received the trunk in the capacity of innkeeper. Boddy had severed his personal connection with the hotel by surrendering his room and paying his bill before the trunk was delivered to Gleason. It was subsequently delivered to him, either under an understanding that it would be held as a pledge for money loaned by him to Boddy, or only for the accommodation of Boddy." So in the case at bar, after the plaintiff, by his own acts and declarations, had severed his personal connection with the defendant, the clerk received the money for the accommodation of the plaintiff, without regard to his relation as guest.

In the case of *McDaniels v. Robinson*, 28 Vt. 387, the plaintiff was a guest of defendant and on the evening of March 5th, plaintiff delivered to the defendant a bag of gold, and immediately thereafter the plaintiff left the inn without any intention of returning and intended to terminate his personal stay there. In that case the court plainly holds that the deposit of the gold with the defendant had no connection with the original relation of landlord and guest, so that such relation must have ceased at the time the gold was deposited, for the court on page 722 says:

"The leaving of the bag of gold in the custody of the defendant had no connection with the original relation of landlord and guest between the parties; and when the money was lost, the plaintiff had ceased to be personally the guest of the defendant; and indeed, we are to understand from the case that when the plaintiff handed the gold to the defendant he had made up his mind to leave the defendant's inn, not to return again to it as a guest, and that he did immediately thereafter leave, with the intention not again to return; and in no proper sense could the plaintiff be said to be the personal guest of the defendant at the time of the loss."

In the case at bar, the plaintiff had not only made up his mind to leave the hotel and not to return to it again as a guest, but he actually communicated that fact to the clerk at or before the time of depositing the money, and he deposited the money not as a guest ordinarily deposits something with an innkeeper, but as we have seen, in lieu of a bank. So that as in the Vermont case, the deposit of the money with the clerk had no connection with the original relation of innkeeper and guest. Under the special facts and circumstances of this case, the authority of the clerk to receive such deposit, so as to bind the defendant, was not within the apparent scope, nor

within the ordinary course, of the clerk's employment, and the plaintiff had failed to show any special authority in the clerk to receive the deposit. The plaintiff knew, or ought to have known, that the clerk had no such authority arising from the ordinary course of his employment as a hotel clerk. That the plaintiff at least doubted such authority in the clerk, is evidenced by the fact that he asked for the manager of the hotel with whom to intrust his money for deposit in the bank. The authority which the clerk assumed was an unusual one, because it was without the apparent scope and ordinary course of the clerk's employment and ought to have put the plaintiff on his guard, and it was a duty incumbent upon the plaintiff to act with ordinary prudence and reasonable diligence under such circumstances, if he desired to hold the defendant responsible for his money.— Mechem on Agency, § 290.

The law of agency in general applies to bailments. The bailee is answerable for the acts of those he employs under him, so far as those acts are committed within the real or apparent scope of the agent's employment.—Schouler's Bailments (3d ed.), § 19.

"While an individual proprietor of an inn may incur a liability as bailee for the safe keeping of goods, which he has voluntarily undertaken to keep for others than guests, it is not within the course of employment of a mere clerk of such innkeeper to receive, on deposit, the goods of any, except guests of the inn, and if he does so, it is a transaction between him and the owner, and no liability for the loss of such goods attaches to the innkeeper."—*Arcade Hotel Co. v. Wiatt*, 44 O. St. 32 at 49.

In the cases of *Murray v. Marshall*, 9 Colo. 482; *Clark v. Ball*, 34 Colo. 223; *Brown Hotel Co. v. Burkhardt*, 13 Col. App. 59, referred to in the briefs, the

facts, circumstances, subjects and purposes of the bailments are so essentially different from those in the present case, that those opinions do not appear to be at all applicable here one way or the other.

From all of the foregoing, it appears that the clerk was without authority to receive plaintiff's money, so as to bind the defendant, and the plaintiff failed to connect the defendant with the loss of his money so as to make the company responsible for its loss. It follows, therefore, that it was error to overrule defendant's motion for nonsuit, and as that error was not cured by any subsequent testimony, the judgment should be reversed and it is so ordered.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.